**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

KUOTHBANG YUOT, a/k/a "Johnson,"
and GOKGOK PUOK, a/k/a "Go Go,"

          Defendants.

No. CR 07-4091-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTIONS IN
LIMINE**

_____

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A.*  *Rule 104* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B.*  *Defendant Yuot's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . 4
      *1.*   *Yuot's criminal history* . . . . . . . . . . . . . . . . . . . . . . . . 5
      *2.*   *Opinions of Yuot's guilt* . . . . . . . . . . . . . . . . . . . . . . . 5
      *3.*   *Opinions about "matching" socks* . . . . . . . . . . . . . . . . . 7
      *4.*   *Use of nicknames* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *5.*   *Yuot's employment history* . . . . . . . . . . . . . . . . . . . . . 11
      *6.*   *Hearsay statements by alleged co-conspirators* . . . . . . . . . 12
   *C.*  *Defendant Puok's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . 13
      *1.*   *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 13
      *2.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*III.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I.  INTRODUCTION

In a six-count Superseding Indictment (docket no. 13), handed down March 3, 2008, defendants Kuothbang Yuot, who is allegedly also known as "Johnson," and Gokgok Puok, who is allegedly also known as "Go Go," along with two other defendants, were charged with offenses allegedly involving trafficking in a mixture or substance containing cocaine that contained cocaine base, commonly called "crack cocaine." One co-defendant has pleaded guilty to the charges against him and another is a fugitive. Therefore, the remaining charges involving defendants Yuot and/or Puok are the following: **Count 1** charges both Yuot and Puok with a "conspiracy" offense charging that, between about June 2007 through about February 2008, each defendant knowingly and intentionally conspired with each other and with others, known and unknown to the Grand Jury, to distribute 50 grams or more of crack cocaine, all in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A); **Count 2** charges defendant Yuot with a "possession with intent to distribute" offense charging that, on or about November 4, 2007, Yuot knowingly and intentionally possessed with intent to distribute 5 grams or more of crack cocaine, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2; **Count 4** charges defendant Puok with a "possession with intent to distribute and distribution" offense charging that, on or about January 23, 2008, Puok knowingly and intentionally possessed with intent to distribute and distributed crack cocaine, all in violation of 21 U.S.C. § 841(a)(1); and **Count 5** charges defendant Puok with a second "possession with intent to distribute and distribution" offense charging that, on or about February 6, 2007, Puok knowingly and intentionally possessed with intent to distribute and distributed crack cocaine. These charges will be renumbered consecutively for purposes of jury

instructions. Trial of defendants Yuot and Puok on these charges is scheduled to begin on July 28, 2008.

In anticipation of trial, both Yuot and Puok filed motions in limine, which are now before the court. In his July 14, 2008, Motion In Limine (docket no. 58), Yuot seeks to exclude six categories of evidence: his criminal history, opinions of his guilt, any opinion that a sock located in his pocket at the time of a traffic stop was the match for a sock containing crack cocaine located in the vehicle in which Yuot was a passenger, use of one of his nicknames, his employment history or lack thereof, and hearsay statements of alleged co-conspirators. The prosecution filed a Resistance (docket no. 66) to Yuot's motion on July 22, 2008. In his July 15, 2008, Motion In Limine (docket no. 59), Puok seeks to exclude evidence of five prior arrests, charges, or convictions. The prosecution filed a Resistance (docket no. 60) to Puok's motion on July 17, 2008. No party requested oral arguments on the pending motions in the manner required by applicable local rules. Therefore, those motions are now fully submitted on the parties' written submissions.

## II. LEGAL ANALYSIS

### A. Rule 104

As a preliminary matter, the court notes that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that

3

truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of the admissibility of the evidence put at issue in the defendants' motions in limine will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, the court turns to consideration of those motions in turn.

## B. Defendant Yuot's Motion In Limine

As mentioned above, defendant Yuot's Motion In Limine seeks to exclude six categories of evidence. The court will consider the admissibility of each category of evidence in turn. Before doing so, however, the court must briefly state the additional factual background that Yuot contends is relevant to the disposition of his motion in limine.

Yuot contends that, on November 4, 2007, law enforcement officers were conducting surveillance at an intersection in Sioux City, Iowa, based on information that a crack cocaine dealer was over by a particular apartment complex selling from his vehicle. The suspected crack dealer was described as a black male who frequently walked around with a small gray dog and who drove a black BMW. Yuot was seen walking with and then entering a black BMW with a person who matched the description of the suspected crack dealer. Law enforcement officers stopped the vehicle for speeding and found Yuot in the passenger seat. Law enforcement officers observed that Yuot was not wearing any socks at the time of the stop. During a pat down search, law enforcement officers discovered $135.00 and a roll of quarters on Yuot's person, and a sock in Yuot's back pocket. A search of the vehicle revealed another sock, in the back seat, that contained approximately an ounce of crack cocaine. The driver was arrested for speeding, and Yuot was arrested on state drug charges, but was later recharged with the federal offenses pending here.

4

### 1. Yuot's criminal history

Yuot first seeks to exclude evidence of his criminal history, which he contends involves a 2001 deferred judgment for theft in the third degree and a 2003 conviction for operating a vehicle while intoxicated. Yuot contends that neither prior conviction is admissible under Rule 404(b) or for impeachment under Rule 609. More specifically, he argues that theft is not a crime of "dishonesty or false statement." The prosecution represents that it has no objection to this part of Yuot's motion and will not introduce such evidence. Therefore, this part of Yuot's motion will be granted.

### 2. Opinions of Yuot's guilt

Yuot next argues that the court should exclude opinions about his guilt, or, more specifically, that he "is" a drug dealer, or that he was part of a conspiracy to distribute crack cocaine, or that he is a "known" drug dealer. Yuot quotes Rule 704(b) of the Federal Rules of Evidence in support of this portion of his Motion In Limine, suggesting that such opinions should be excluded as improper opinions on the ultimate issue of his mental state.

The prosecution agrees that no witness can testify that he or she believes that the defendant is guilty, but a witness may testify to his or her observations of the defendant dealing drugs, the defendant referring the witness to other individuals with whom the defendant is associated to purchase drugs, or the defendant giving orders or directions to other individuals involved in drug dealing. The prosecution argues that a witness may also testify that the witness personally purchased drugs from the defendant and may testify that, on such an occasion, the defendant was a drug dealer. The prosecution represents that it will not elicit testimony concerning any witness's opinion as to the defendant's guilt, but that it should not be precluded from eliciting testimony that the defendant "is" a drug dealer if the witness has personal knowledge of the defendant's drug dealing activity.

5

Although Yuot seeks to exclude opinions that he "is" a drug dealer, the court does not read Yuot's motion to seek exclusion of opinion testimony that certain evidence "is consistent with" drug-trafficking, nor would such evidence be excludable. *See, e.g., United States v. Taylor*, 462 F.3d 1023, 1026-27 (8th Cir. 2006) (a police officer could permissibly testify that certain conduct, possession of a large quantity of drugs and possession of firearms, was consistent with drug dealing, because such testimony assists the jurors in understanding the business of drug trafficking). Nor would it be improper for a witness to testify to the witness's personal knowledge of drug activity by the defendant, such as observations of the defendant dealing drugs, the defendant referring the witness to other individuals with whom the defendant is associated to purchase drugs, or the defendant giving orders or directions to other individuals involved in drug dealing. The court does find, however, that even where a witness has personal knowledge of drug activity by the defendant, that witness's opinion that the defendant "is" a drug dealer is inadmissible, because it is for the jury to decide whether the evidence proves that the defendant was conspiring to distribute crack cocaine or did in fact possess with intent to distribute crack cocaine, as charged in the indictment, and an opinion that the defendant "is" a drug dealer would not assist the jury to make the necessary determinations. *See* FED. R. EVID. 701 (lay opinion testimony must be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"); FED. R. EVID. 702 (expert testimony must be such that it will assist the trier of fact to understand the evidence or to determine a fact in issue).

Yuot relies on Rule 704(b), which provides that "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto," because

6

"[s]uch ultimate issues are matters for the trier of fact." FED. R. EVID. 704(b). The court is not convinced of, but does not wholly reject, the notion that opinion testimony that the defendant "is" a drug dealer or a "known" drug dealer or was involved in a drug conspiracy may trespass on the forbidden zone of testifying that the defendant did have the mental state or condition constituting an element of the crime charged, as the defendant contends. *See* FED. R. EVID. 704(b) ("Such ultimate issues are matters for the trier of fact alone."); *see also United States v. Wang*, 49 F.3d 502, 504-05 (9th Cir. 1995). The court relies, however, on Rules 701 and 702 for its determination that the opinions challenged here are inadmissible, because they would not be helpful to the jury.

Thus, this portion of Yuot's Motion In Limine will be granted to the extent that Yuot seeks to exclude opinions that he "is" a drug dealer, or was a "known" drug dealer, or was involved in a drug conspiracy, but will be denied to the extent that Yuot seeks to exclude opinions that certain evidence pertaining to him "is consistent with" drug trafficking or testimony that a witness has personal knowledge of drug dealing activity by Yuot.

### 3. Opinions about "matching" socks

Next, Yuot seeks to exclude any opinion that a sock located in his pocket at the time of a traffic stop was the match for a sock containing crack cocaine located in the vehicle in which Yuot was a passenger. Yuot contends that any such opinion is impermissible under Rule 702, unless the prosecution's witness expressing such an opinion is able to establish some specialized knowledge as to how socks can be distinguished as matches.

The prosecution represents that it will not offer any evidence regarding conclusions that two socks recovered in the vehicle stop involving this defendant are identical, although the prosecution contends that law enforcement officers should be able to testify about the general nature and appearance of the socks. The prosecution argues that such testimony

requires no special training or technical skill and does not run afoul of the rules of evidence.

The court finds that this part of Yuot's Motion In Limine should be denied, because expert testimony that the socks "matched" is not essential to establish the probative value of the "sock" evidence. First, jurors could reasonably infer that both socks belonged to Yuot, whether or not the socks "matched" each other, where Yuot was observed to be sockless at the time of his arrest, and two socks were later discovered, one in his pocket and one in the vehicle in which he was riding. Second, the court finds that a lay person could permissibly testify pursuant to Rule 701 that the socks "appeared" to "match," if such an opinion or inference was based on the perception of the witness, from such things as the brand, color, material, and wear of the socks, to name only a few matters open to anyone's observation on which an opinion that the socks "matched" could be rationally based; such an opinion would be helpful to a clear understanding of the witness's testimony (that is, testimony about the circumstances leading to Yuot's arrest) or the determination of a fact in issue (who possessed the sock containing crack cocaine); and would not be based on scientific, technical, or other specialized knowledge within the scope of Rule 702. FED. R. EVID. 701 (stating these requirements for "lay opinion" testimony). While the prosecution would certainly be allowed to present "expert" testimony demonstrating from sufficient facts and data, reliable principles, and methods, that the socks "matched" in a specialized sense, *see* FED. R. EVID. 702, the prosecution has indicated no intention to do so, and such evidence simply is not the only permissible evidence giving rise to an inference that the socks "matched" or, more importantly, that they belonged to Yuot. By the same token, Yuot would be entitled to attempt to impeach a lay witness's opinion that the socks "appeared" to "match" by demonstrating that the evidence of the "match" did

8

not satisfy "*CSI* standards,"◾[1] but his ability to impeach the lay witness's opinion on that ground does not make the lay witness's opinion inadmissible.

This portion of Yuot's Motion In Limine will be denied.

### 4. *Use of nicknames*

Next, Yuot contends that he is described by police officers as having two nicknames or aliases, "Johnson" and "Lord." Although Yuot does not challenge evidence of the nickname "Johnson," which actually appears in the indictment, he does object to evidence of the nickname "Lord," because he contends that that nickname suggests some type of placement in a hierarchy or leadership role, such as is inherent in a drug conspiracy, and as such, is unduly prejudicial.

The prosecution asserts that it believes that each of the witnesses knew this defendant either by the nickname "Johnson" or by his true name. Therefore, the prosecution represents that it has no objection to restricting the testimony to either the nickname "Johnson" or this defendant's true name, at least to the extent that a witness

---

[1]The Fifth Circuit Court of Appeals recently explained the so-called "*CSI* effect," as follows:

> "The 'CSI effect' is a term that legal authorities and the mass media have coined to describe a supposed influence that watching the television show CSI: Crime Scene Investigation has on juror behavior. Some have claimed that jurors who see the high-quality forensic evidence presented on CSI raise their standards in real trials, in which actual evidence is typically more flawed and uncertain." Tom R. Tyler, *Viewing CSI and the Threshold of Guilt: Managing Truth and Justice in Reality and Fiction*, 115 Yale L.J. 1050, 1050 (Mar. 2006). Professor Tyler's article explains that the existence of a "CSI effect" is plausible but has not been proven empirically.

*United States v. Fields*, 483 F.3d 313, 355 n.39 (5th Cir. 2007).

9

knew this defendant by either or both of these names. On the other hand, the prosecution argues that, if a witness only knew this defendant as "Lord," then that fact will be brought to the court's attention outside the presence of the jury prior to any such testimony, but such testimony would be admissible.

Although the Eighth Circuit Court of Appeals has recommended that aliases not be used, it has also upheld their use. *See United States v. Evans*, 272 F.3d 1069, 1090 (8th Cir. 2001) (comparing *Petrilli v. United States*, 129 F.3d 101, 104 (8th Cir.), *cert. denied*, 317 U.S. 657 (1942), with *United States v. Bradford*, 246 F.3d 1107, 1117-18 (8th Cir. 2001), and upholding the use of an alias, even though another, older person was also known to some witnesses by that alias, where the evidence was sufficient to distinguish the two persons using the same alias). The Eighth Circuit Court of Appeals has specifically recognized that "[i]n some cases, the use of a defendant's irrelevant nickname to suggest his bad character or unsavory proclivities may be prejudicial." *United States v. Delpit*, 94 F.3d 1134, 1146 (8th Cir. 19 96). On the other hand, the Eighth Circuit Court of Appeals has also noted that "[t]he repeated use of an alias is probative of consciousness of guilt." *United States v. Bryson*, 110 F.3d 575, 565 (8th Cir. 1997) (citing *United States v. Valencia-Lucena*, 925 F.2d 506, 513 (1st Cir. 1991), and *United States v. Eggleton*, 799 F.2d 378, 381 (8th Cir. 1986)). Moreover, use of a nickname or alias may be appropriate where the defendant is identified or referred to exclusively by that nickname or alias. *Delpit*, 94 F.3d at 1146.

Here, Yuot suggests that the nickname "Lord" is merely an irrelevancy intended to suggest some unsavory proclivity, although what unsavory proclivity, if any, is far less obvious than it has been in other cases. *See Delpit*, 94 F.3d at 1146 (defendant's nickname was "Monster"). The question of the use of the nickname "Lord," however, is essentially mooted by the prosecution's representation that no witness knew Yuot exclusively by that

nickname. *Compare Delpit*, 94 F.3d at 1146 (use of a nickname or alias may be appropriate where the defendant was identified or referred to exclusively by that nickname or alias). Under these circumstances, the court concludes that evidence of the nickname or alias "Lord" should be excluded until or unless the prosecution alerts the court, out of the presence of the jury, that a witness did, indeed, know Yuot exclusively by that nickname or alias.

Because another nickname of this defendant and a nickname of co-defendant Puok may come into evidence, the court will give an extensive instruction concerning such nicknames. That instruction will explain that, where a person who allegedly committed an offense is known by an alias or nickname, the prosecution must prove beyond a reasonable doubt, as an element of the offense, that the defendant in question is the person who committed the offense.

Therefore, this portion of defendant Yuot's Motion In Limine will be granted, with the caveat that the prosecution may be allowed to show that Yuot was known by a nickname or alias other than "Johnson," if the prosecution first shows the court, outside the presence of the jury, that a witness knew this defendant exclusively by a nickname other than "Johnson."

### 5. *Yuot's employment history*

The penultimate category of evidence that Yuot seeks to exclude is evidence of his employment history or lack thereof. He contends that such evidence is nothing more than prejudicial and inadmissible character evidence. He admits that he is concerned about the prosecution's use of evidence of his lack of employment history to highlight or focus upon the source of cash on his person at the time that he was arrested and searched. Specifically, he argues that the evidence improperly suggests that he must be a drug dealer, because he possessed cash without any means of earning money. The prosecution argues

11

that there must be some source for the funds recovered from this defendant and that "[u]nexplained evidence of wealth subsequent to the commission of a crime is relevant and generally admissible in the district court's discretion, even in the absence of direct proof of a defendant's prior impecuniousness," quoting *United States v. Rodriguez*, 484 F.3d 1006, 1012 (8th Cir. 2007).

The Eighth Circuit Court of Appeals has recognized that evidence that a defendant lacked regular employment, but nevertheless could afford to pay for unusual items—in that case, four or five flights to Los Angeles within approximately a year—was evidence suggesting that the defendant was supporting himself other than by legitimate employment. *See United States v. Sparks*, 949 F.2d 1023, 1028 (8th Cir. 1991) (considering sufficiency of the evidence for a reasonable juror to find the defendant guilty of conspiracy to possess drugs with intent to distribute them). Similarly, here, this defendant's lack of employment history may reasonably suggest that he was supporting himself in a way other than by legitimate employment, *see id.*, and his unexplained possession of cash may be probative of his involvement in drug activity, *see Rodriguez*, 484 F.3d at 1012, so that such evidence is relevant and admissible pursuant to Rules 401 and 402. Nor is the court convinced that the evidence is so unfairly prejudicial that it should nevertheless be excluded pursuant to Rule 403 or Rule 404(a) or (b), if there is other evidence suggesting that this defendant was supporting himself by dealing drugs. Therefore, this portion of defendant Yuot's Motion In Limine will also be denied.

### 6. *Hearsay statements by alleged co-conspirators*

Finally, Yuot seeks to exclude any purported co-conspirator hearsay. He acknowledges the procedure for handling objections to purported co-conspirator hearsay outlined in *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978), and asserts that he will follow that procedure. The prosecution, likewise, represents that it will follow the *Bell*

12

procedures. The court finds that this part of defendant Yuot's Motion In Limine should be denied, where the parties and the court will adhere to the *Bell* procedures at trial.

### C. Defendant Puok's Motion In Limine

Defendant Puok seeks to exclude evidence of and references to the following prior arrests, charges, or convictions: (1) a February 29, 2003, charge of possession with intent to deliver marijuana, in Woodbury County, Iowa, which resulted in a deferred judgment; (2) a January 15, 2004, conviction for failure to carry an immigration card; (3) an August 9, 2004, conviction for an offense that Puok identifies as "fraud-false impersonation," in Sioux Falls, South Dakota; (4) an August 14, 2005, conviction for simple misdemeanor assault in Sioux Falls, South Dakota; and (5) a July 8, 2006, conviction for "aggravated assault" in Sioux Falls, South Dakota.

#### 1. Arguments of the parties

Puok argues that the conduct described in (2), (3), (4), and (5), above, is neither relevant to any material issue in this matter nor similar in kind to the present charged offenses. Thus, he argues that evidence concerning such conduct clearly does not meet the standards established in this Circuit for admissibility of "bad acts" evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. Puok acknowledges, however, that the admissibility of the prior marijuana conviction, identified in (1) above, presents a more complicated issue.

As to that prior conviction for possession with intent to deliver marijuana, Puok argues that admission of evidence of that prior offense will result in a distracting "mini-trial" with little probative value and significant potential for prejudice or confusion of the issues. Puok argues that the offense occurred in 2002, several years prior to the date of the conduct presently at issue. He also argues that the prior offense does not have much

13

probative value, where it involved marijuana, and the present charges involve crack cocaine, and his knowledge that the controlled substance at issue on present charges was crack cocaine is "obvious on its face," so that his knowledge is not genuinely in dispute. Thus, he argues that the prior offense involved a different controlled substance and is so remote in time that it has little probative value, but is substantially prejudicial, although he does not clearly articulate the nature of the prejudice.

The prosecution states that it has no objection to exclusion of evidence of or references to the convictions for carrying an immigration card and simple assault, *i.e.*, the offenses identified as (2) and (4), respectively, above. The prosecution does argue, albeit rather perfunctorily, that the prior convictions for "fraud-false impersonation" and aggravated assault, identified as (3) and (5), respectively, above, are admissible pursuant to Rule 609 of the Federal Rules of Evidence, if the defendant testifies.

Like Puok, the prosecution focuses most of its resistance on the admissibility of the prior conviction for possession with intent to distribute marijuana, identified in (1) above, pursuant to Rule 404(b). Contrary to Puok's assertions, the prosecution argues that this prior conviction is sufficiently similar in kind to charged offenses to be admissible, because it is probative of intent to deliver controlled substances, noting that the Eighth Circuit Court of Appeals has affirmed the admissibility of a prior conviction for possession with intent to deliver marijuana in a trial of charges of conspiracy to manufacture methamphetamine, citing *United States v. Hessman*, 493 F.3d 977 (8th Cir. 2007). The prosecution also argues that the prior conviction, only four or five years prior to the alleged offenses at issue here, is not so remote in time as to be inadmissible, where the Eighth Circuit Court of Appeals has observed that a four- or five-year interval was "well within the bounds of admission," in *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002).

14

## 2.    *Analysis*

Rule 404(b) of the Federal Rules of Evidence prohibits admission of prior convictions and "bad acts" simply to show a propensity to commit a charged offense, but does permit such evidence to be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED. R. EVID. 404(b). The Eighth Circuit Court of Appeals has explained the scope of admissibility of evidence pursuant to Rule 404(b), as follows:

> While we have interpreted Rule 404(b) to be a rule of inclusion, *see United States v. Sykes*, 977 F.2d 1242, 1246 (8th Cir. 1992), this interpretation does not give the government the unhindered ability to introduce evidence of prior crimes. Instead, the evidence of prior crimes must be 1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime; 3) supported by sufficient evidence; and 4) such that its potential prejudice does not substantially outweigh its probative value. *See United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002).

*United States v. Crenshaw*, 359 F.3d 977, 998 (8th Cir. 2004); *accord United States v. Lakoskey*, 462 F.3d 965, 979-80 (8th Cir. 2006) (reiterating that Rule 404(b) is a rule of inclusion and that evidence is admissible under Rule 404(b) if it satisfies the same four-factor test), *cert. denied*, ___ U.S. ___, 127 S. Ct. 1388 (2007). Thus, the Eighth Circuit Court of Appeals will reverse admission of purported Rule 404(b) evidence "'only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006) (quoting *United States v. Thomas,* 398 F.3d 1058, 1062 (8th Cir. 2005), with internal quotations omitted). On the other hand, admission of such evidence is erroneous, for example, where the record shows that the actual use that the prosecution made of the evidence did not demonstrate that the evidence was used for a permissible

15

purpose and the court's limiting instruction failed to mention the prosecution's ostensible purpose as a basis for considering the evidence. *Crenshaw*, 359 F.3d at 1001-02.

Rule 609 also permits evidence of a defendant witness's prior conviction to be admitted for purposes of attacking the defendant witness's truthfulness, if the crime was punishable by imprisonment in excess of one year, and "if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." FED. R. EVID. 609(a)(1). Rule 609 also permits a prior conviction of "any witness" to be admitted to attack the character for truthfulness of the witness, if the prior conviction involved an act of dishonesty or false statement. *See* FED. R. EVID. 609(a)(2).■[2]

The court agrees with the parties that Puok's prior "bad acts" involving failure to carry an immigration card and simple assault, identified above as (2) and (4), respectively, should be excluded. These prior "bad acts" have little or no probative value to any offense charged here, so that they are not admissible pursuant to Rule 404(b), and they do not appear to be admissible pursuant to Rule 609 for purposes of impeachment, even if Puok testifies, because they do not appear to be punishable by imprisonment for more than one year or to have involved dishonesty or false statement. Therefore, evidence of or references to these two prior convictions will be excluded.

On the other hand, the prosecution argues, albeit rather perfunctorily, that the prior convictions for "fraud-false impersonation" and "aggravated assault," identified as (3) and

---

[2]Evidence of a prior conviction is not admissible under Rule 609 "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect," FED. R. EVID. 609(b), but none of Puok's prior convictions at issue here is older than ten years.

(5) above, respectively, are admissible for impeachment purposes pursuant to Rule 609 of the Federal Rules of Evidence, if Puok testifies. The prosecution apparently assumes that the prior conviction for aggravated assault was punishable by imprisonment for more than one year, *see* FED. R. EVID. 609(a)(1), and that the prior conviction for "fraud-false impersonation" involved "an act of dishonesty or false statement" by Puok, *see* FED. R. EVID. 609(a)(2). Neither requirement for admissibility has been demonstrated, however. Thus, until and unless the prosecution demonstrates, out of the jurors' hearing, that the prior conviction for aggravated assault was punishable under South Dakota law by imprisonment for more than one year, and the court finds that the probative value of this evidence is not outweighed by its potential for prejudice, *see* FED. R. EVID. 609(a)(1), or that the prior conviction for "fraud-false impersonation" involved "an act of dishonesty or false statement" by Puok under South Dakota law, *see* FED. R. EVID. 609(a)(2), evidence of or references to those prior convictions will be excluded.

Like the parties, the court finds that the determination of the admissibility of evidence of or references to Puok's February 29, 2003, charge of possession with intent to deliver marijuana, in Woodbury County, Iowa, which resulted in a deferred judgment, identified as (1) above, requires more detailed analysis. As to the first factor in the test for admissibility of such evidence pursuant to Rule 404(b), relevance to a material issue, *see Lakoskey*, 462 F.3d at 979-80; *Crenshaw*, 359 F.3d at 998, the Eighth Circuit Court of Appeals has "frequently upheld the admission of prior drug convictions to show knowledge and intent when the defendant denied the charged drug offense." *United States v. Marquez*, 462 F.3d 826, 830 (8th Cir. 2006); *accord United States v. Hessman*, 493 F.3d 977, 983 (8th Cir. 2007). Thus, this prior offense is at least somewhat relevant here.

The second requirement for admissibility of this evidence pursuant to Rule 404(b) is whether the prior conviction is "similar in kind" to the charged offense and not overly

17

remote in time. *See Lakoskey*, 462 F.3d at 979-80; *Crenshaw*, 359 F.3d at 998. This court has suggested that prior drug offenses involving different controlled substances or different kinds of conduct are less probative, and potentially more prejudicial, because they are less "similar in kind" to the charged offense. *See United States v. Donisi*, 2007 WL 2915630, *3 (Sept. 25, 2007) ("To the extent that evidence of prior drug activity is not shown to involve the same controlled substances . . . or the same conduct . . . its probative value is slight, and the potential for unfair prejudice, in the form of conviction of the charged offenses because the defendant has engaged in prior drug activity, is substantial."). Here, as Puok points out, his prior state conviction for delivery of a controlled substance involved marijuana, while the present charges against him allegedly involve crack cocaine. On the other hand, the prior conviction and the present offenses have in common conduct involving "intent to distribute" controlled substances. This court has observed that where only some of the conduct at issue in the prior offense was the same or similar to the conduct in the charged offenses, but the controlled substances involved were not the same, this factor did not strongly support either admission or exclusion of the evidence of the prior offense. *Id*. The court reaches the same conclusion here.

Nor does the court find that the prior conviction is so remote in time that it should be excluded. *See Lakoskey*, 462 F.3d at 979-80 (the prior conviction must be "similar in kind" to the charged offense and not overly remote in time); *Crenshaw*, 359 F.3d at 998 (same). In support of his "remoteness" argument, Puok cites *United States v. Mejia-Uribe*, 75 F.3d 395, 399 (8th Cir. 1996), a case in which the prior conviction was sixteen years earlier, whereas the prior conviction in this case is only about four or five years earlier. As the government points out, the Eighth Circuit Court of Appeals has held that "only five years (over four and a half of which he spent in prison) separated [the

18

defendant's] alleged current criminal conduct and his past conduct, rendering the past conduct well within the bounds of admission." *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002). Thus, the court finds that Puok's prior conviction is not excludable on "remoteness" grounds, standing alone, nor does the time interval here have much impact on probative value of the prior conviction.

The third factor for the admissibility of the prior marijuana conviction, sufficiency of the evidence of the prior offense, *Lakoskey*, 462 F.3d at 979-30; *Crenshaw*, 359 F.3d at 998, is not clearly met, where the court has not been informed of the nature and extent of the prosecution's proof of the prior conviction. However, this hurdle is relatively easily cleared, if the prosecution's evidence of the prior conviction includes the charging documents. If such evidence is both sufficient and properly limited, this element will also likely be satisfied. *See United States v. Ruiz-Estrada*, 312 F.3d 398, 403-04 (8th Cir. 2002) (the prosecution offered sufficient reliable evidence of a prior conviction in the form of a certified copy of the criminal complaint and a warrant of commitment). Proper limitations on the proof of the prior conviction will also avoid Puok's concerns about a "mini-trial."

Thus, the admissibility of Puok's February 29, 2003, charge of possession with intent to deliver marijuana comes down to the fourth factor in the determination of admissibility pursuant to Rule 404(b), whether the probative value of this evidence is outweighed by its potential for prejudice, confusion of the issues, or waste of time. *See Lakoskey*, 462 F.3d at 979-80 (fourth factor for determination of admissibility of Rule 404(b) evidence is the balance of probative value against prejudice); *Crenshaw*, 359 F.3d at 998 (same); *see also Clark v. Martinez*, 295 F.3d 809, 814 (8th Cir. 2002) (Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)); *United States v. Mound*, 149 F.3d 799, 801-02 (8th Cir. 1998) (same), *cert. denied*, 525 U.S. 1089 (1999). The

19

court notes that the prosecution has suggested that the evidence of Puok's prior marijuana conviction is probative of intent to deliver controlled substances, and Puok has failed to articulate clearly what potential prejudice is involved. Under the circumstances, the court cannot say that the evidence clearly has no bearing on the case or that it is likely to be offered solely to prove Puok's propensity to commit criminal acts. *Marquez*, 462 F.3d at 830 (observing that exclusion is appropriate when the evidence has no bearing on the case or is offered solely to prove criminal propensity). Moreover, the potential for prejudice can be mitigated by an instruction informing the jury of the proper uses of the evidence of Puok's prior marijuana conviction. *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence.").

Therefore, although it is a close call, the court concludes the portion of Puok's motion in limine seeking to exclude evidence of or references to Puok's February 29, 2003, charge of possession with intent to deliver marijuana, in Woodbury County, Iowa, which resulted in a deferred judgment, should be denied.◾[3]

---

[3]If the prosecution intends to use this prior conviction solely for impeachment purposes, pursuant to Rule 609, if Puok testifies, then the prosecution will have to demonstrate that the prior offense qualifies under Rule 609(a)(1) as an offense punishable by imprisonment in excess of one year under Iowa law, notwithstanding Puok's deferred judgment on that offense. It appears that such an offense may have been classified as a class "D" felony under Iowa law in 2003, *see* IOWA CODE § 124.401(1)(d) (2003), or merely as an "accommodation" offense, a "serious misdemeanor," punishable by not more than six months imprisonment, *see* Iowa Code §§ 124.410, 124.401(5) (2003). Thus, on the information submitted so far, the court cannot decide the admissibility of this prior conviction solely for impeachment purposes pursuant to Rule 609.

20

### III.  CONCLUSION

Upon the foregoing,

1.      Defendant Yuot's July 14, 2008, Motion In Limine (docket no. 58) is **granted in part and denied in part**.  More specifically,

      a.      That part of defendant Yuot's Motion In Limine seeking to exclude evidence of his prior criminal history is **granted**;

      b.      That part of defendant Yuot's Motion In Limine seeking to exclude opinions about his guilt is **granted** to the extent that Yuot seeks to exclude opinions that he "is" a drug dealer, or was a "known" drug dealer, or was involved in a drug conspiracy, but **denied** to the extent that Yuot seeks to exclude opinions that certain evidence pertaining to him "is consistent with" drug trafficking or testimony that a witness has personal knowledge of drug dealing activity by Yuot;

      c.      That part of defendant Yuot's Motion In Limine seeking to exclude any opinion that a sock located in his pocket at the time of a traffic stop was the "match" for a sock containing crack cocaine located in the vehicle in which Yuot was a passenger is **denied**;

      d.      That part of defendant Yuot's Motion In Limine seeking to exclude evidence of a nickname or alias other than "Johnson" is **granted**, with the caveat that the prosecution may be allowed to show that Yuot was known by another nickname or alias, if the prosecution first shows the court, outside the presence of the jury, that a witness knew this defendant exclusively by a nickname other than "Johnson."

      e.      That part of defendant Yuot's Motion In Limine seeking to exclude evidence of his employment history or lack thereof is **denied**; and

f.	That part of defendant Yuot's Motion In Limine seeking to exclude any purported co-conspirator hearsay is **denied**, where the parties and the court will adhere to the *Bell* procedures at trial.

2.	Defendant Puok's July 15, 2008, Motion In Limine (docket no. 59) is, likewise, **granted in part and denied in part**.  More specifically,

a.	That part of Puok's Motion In Limine seeking to exclude evidence of prior convictions for failure to carry an immigration card and simple assault, identified in his Motion as (2) and (4), respectively, is **granted**;

b.	That part of Puok's Motion In Limine seeking to exclude evidence of prior convictions for "fraud-false impersonation" and "aggravated assault," identified in his Motion as (3) and (5), respectively, is **granted** without prejudice to the prosecution's attempt to establish the requirements for admissibility of such evidence pursuant to Rule 609 for impeachment purposes, if this defendant testifies;

c.	That part of Puok's Motion In Limine seeking to exclude evidence of or references to Puok's February 29, 2003, charge of possession with intent to deliver marijuana, in Woodbury County, Iowa, which resulted in a deferred judgment, identified in his Motion as (1), is **denied**.

**IT IS SO ORDERED.**

**DATED** this 23rd day of July, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA